IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEWIS A. HILDERBRAND and MORRIS WRAY )
DAVIS, JR.,                              )
                                        )        COMPLAINT
                Plaintiffs,             )
                                        )        CLASS ACTION
v.                                      )
                                        )        COLLECTIVE ACTION
PELHAM TRANSPORTATION CORPORATION,      )        29 U.S.C. § 216(b)
THEODORE J. DEJOURNETTE, JR., and BARBARA )
J. DEJOURNETTE,                         )        Civil Action No.:
                                        )        1:20-cv-1020
                Defendants.             )
_____ )

## I.   PRELIMINARY STATEMENT

1.     This is an individual action against a closely held corporate defendant and its

owner-operators by plaintiff Lewis A. Hilderbrand ("Hilderbrand") for backpay,

compensatory, and punitive damages, reinstatement, other equitable relief, and attorney fees

for his wrongful and discriminatory discharge because of his race and color pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42

U.S.C. § 1981a, and the public policy of North Carolina declared in N.C.Gen.Stat. §

143-422.2(a).

2.     It is also a collective action for failure to pay wages at the overtime rate

required by the FLSA by both of the named plaintiffs under 29 U.S.C. § 216(b) of the Fair

Labor Standards Act ("FLSA") for all persons employed for more than 40 hours in the same

workweek by the defendants to drive in whole or in part small vehicles with a gross vehicle

weight rating ("GVWR") of less than 10,000 pounds when that small vehicle was designed

or used to transport 8 passengers or less (including the driver).

3.　　It is also a class action under N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), and 95-25.22(a)-(a1) and 95-25.22(d) of the NC Wage and Hour Act ("NCWHA") based upon the defendants' failure to keep the promise they made at page 4 of the attached copy of excerpts from the Pelham Employee Handbook of Policies & Procedures revised January 2019 ("Employee Handbook") that they gave to the named plaintiffs and all those employees they compensated on an hourly basis that "any hours worked over 40 hours in a given work week will be paid at the rate of time and a half."

4.　　In the alternative, in the event that the plaintiffs' employment by the defendants in excess of 40 hours in the same workweek is not covered by the FLSA, this action is brought under N.C.Gen.Stat. §§ 95-25.4 and 95-25.22(a)-(a1) of the NCWHA and the NCWHA statutes cited in ¶3 above of this Complaint based upon the defendants' failure to pay the named plaintiffs all promised wages as described in ¶3 above and at the overtime rate required by N.C.Gen.Stat. § 95-25.4 that was disclosed to them and other similarly situated employees pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) and at the rate required by N.C.Gen.Stat. § 95-25.4 when those wages were due pursuant to N.C.Gen.Stat. § 95-25.6 of the NCWHA for those workweeks in which the plaintiffs and those other similarly situated employees worked in excess of forty hours in the same workweek.

5.　　In addition to the individual relief sought by plaintiff Hilderbrand that is described in ¶1 above, based upon their claims described in ¶2 under 29 U.S.C. § 207 of the Fair Labor Standards Act, their NCWHA claims under N.C.Gen.Stat. §§ 95-25.6 and

95-25.13(1)-(2) that are described in ¶3 above, and the plaintiffs' alternative claims under N.C.Gen.Stat. §§ 95-25.4, 95-25.6, and 95-25.13(1)-(2) of the NCWHA that are described in ¶4 above, the named plaintiffs, and the and the class and collective group of workers they seek to represent under the NCWHA and FLSA seek payment of back wages and an equal amount of liquidated damages, attorney fees, interest, and costs under 29 U.S.C. §216(b) and N.C.Gen.Stat. §§95-25.22(a), (a1), and (d).

## II.   JURISDICTION

6.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1337, 29 U.S.C. § 216(b), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §1367(a).

7.     This Court has the power to grant declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

## III.   VENUE

8.     Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b) and 1391(c), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. Section 216(b).   The regular and substantial business activities of defendant Pelham Transportation Corporation ("Pelham") in a substantial number of counties which fall within the jurisdiction of this court make Pelham subject to the personal jurisdiction of this court at the time this action was commenced.   Defendants Theodore J. Dejournette, Jr. and Barbara J. Dejournette ("Dejournette Defendants") both reside in Rockingham County, North Carolina.

## IV.   NAMED PLAINTIFFS

9.     As part of their regular job for Pelham, Pelham suffered or permitted the two

3

named plaintiffs and other similarly situated drivers to drive a mixed fleet of vehicles consisting of vehicles weighing both more and less than 10,000 pounds with those with a gross vehicle weight rating ("GVWR") of less than 10,000 pounds designed or used to transport 8 passengers or less (including the driver) for the following time periods:

(a)     For plaintiff Hilderbrand, a citizen of the United States of America, for the entire time period starting with at least the date falling three chronological years before the date on which this action was filed and ending with wrongful and discriminatory discharge on June 4, 2020 because of his race (African-American) and color (dark black).   Before his discharge on June 4, 2020, plaintiff Hilderbrand had been a productive, exemplary employee of Pelham for approximately 7½ years.

(b)     For plaintiff Morris Wray Davis, Jr. ("Davis"), for the entire time period starting with at least a day in February 2019 and ending with a date in or about February 2020.

10.     As a part of his regular job in the time period described in ¶9(b) above, the defendants assigned plaintiff Davis to spend and plaintiff Davis did spend more than half of his driving time for the defendants driving Dodge Caravan minivans that the defendants furnished and assigned him to drive with a gross vehicle weight rating ("GVWR") of less than 10,000 pounds designed or used to transport 8 passengers or less (including the driver)(hereinafter referred to as "smaller vehicles").

11.     As a part of his regular job in the time period described in ¶9(b) above, the defendants assigned plaintiff Hilderbrand to spend and he did spend most of his driving

4

time for the defendants driving Mercedes Benz sprinter vans that the defendants furnished and assigned him to drive with a gross vehicle weight rating ("GVWR") of substantially more than 10,000 pounds designed and used to transport more than 8 passengers (including the driver)(hereinafter referred to as "larger vehicles"). However, as part of his regular job in that same time period, the defendants also assigned plaintiff Hilderbrand to drive and plaintiff Hilderbrand did drive smaller vehicles several times a month.

V.      DEFENDANTS

12.     On November 14, 2003, defendant Pelham Transportation Corporation (hereinafter referred to as "Pelham") was incorporated and continues to exist as a closely held, for profit, corporation that was and is organized under the laws of the state of North Carolina for the purpose of providing safe, reliable, and confidential transportation, with a specialty in wheelchair and other forms of medically-related transportation. Among the transportation services that it employs drivers to provide on a regular basis with its fleet of smaller and larger vehicles are small group transportation, charter and shuttle services, and airport transport services to and from the airport.

13.     The two named plaintiffs and at least some of the driver employees they seek to represent provided and/or provide those transportation services within and without Guilford County and Rockingham County, North Carolina and in other counties both within and in states proximate to North Carolina.

14.     Since at least October 1, 2016, Barbara Dejournette and Theodore Dejournette, Jr. ("Dejournette Defendants") are and have been the Vice President and

President, respectively, and the owner-operators of Pelham.

15. At all times during that same time period, acting in their capacity as the two principals of Pelham, the Dejournette Defendants were at least two of the Pelham members of Management with both the "budgetary authority" referred to in page 4 of the attached copy of the Employee Handbook and the authority to impose "disciplinary action" for a "policy violation" in the section of that Handbook entitled "**Hourly – non-exempt Employees**" that appears at page 4 of the same.

16. Again at all times in that same time period, the Dejournette Defendants had and exercised the authority on a day to day basis to:

(a) Determine the hourly rate of pay Pelham would pay to the named plaintiffs and the other driver employees that they seek to represent.

(b) Determine whether and, if so, on what basis Pelham would pay any extra pay per hour to the named plaintiffs and the other driver employees to seek to represent when the named plaintiffs and those driver employees worked more than 40 hours in the same workweek.

(c) Determine whether the named plaintiffs and the drivers they seek to represent would be assigned to drive with in larger vehicles or smaller vehicles.

(d) Determine whether and on what basis Pelham would count as hours worked the time that the named plaintiffs and the other driver employees the named plaintiffs seek to represent were engaged in activities other than actual driving when the was necessarily required to be on the employer's premises, on duty or at a

prescribed work place.

(e) Determine whether to pay promised wages in the form of "Holiday Pay" for the "Holidays" that Pelham recognized at page 6 of the attached copy of the Pelham Employee Handbook that it distributed to the named plaintiffs and all its other driver employees.

(f) Determine whether to pay promised wages in the form of "Vacation" or "Sick Leave" pay that Pelham disclosed at page 7 of the attached excerpts of the Pelham Employee Handbook that it distributed to the named plaintiffs and all its other driver employees.

(g) Determine when and on what basis to terminate the employment of the Plaintiffs and any other employee of Pelham.

17. At all times relevant to this complaint since October 1, 2016, Pelham and the Dejournette Defendants were and/or are the "employer" or "joint employer" of the named plaintiffs and more than 15 driver employees that the named plaintiffs seek to represent within the meaning of 29 U.S.C. §203(d). During that same time period, Pelham regularly employed more than 15 employees of which more than 15 employees worked each working day in each of more than 20 calendar weeks in both 2020 and in 2019.

18. The registered agent for service of process on Pelham is Theodore Dejournette, Jr., 114 West Morehead Street, Reidsville, North Carolina 27320.

19. During each of the four chronological years immediately preceding the date

on which this action was filed and for all of the time periods described in ¶¶9(a)-(b), 20-21, 36-39, and 103-06 below, upon information and belief, the plaintiffs and the employees that they seek to represent were employed in an enterprise that was owned and operated by one or more of the defendants that:

       (a)    had and has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by some person or entity other than the defendants, and

       (b)    is and for each chronological year starting with October 1, 2016 and continuing through the present date, was an enterprise whose annual gross volume of sales made or business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

## VI.   FLSA STATUTORY CLASS ACTION ALLEGATIONS

20.    The named plaintiffs maintain this collective action against all of the defendants, jointly and severally, for and on behalf of themselves and all other similarly situated current and/or former joint employees of the defendants who jointly and regularly employed them and those other similarly situated persons to perform hours worked in excess of 40 hours in the same workweek in the driving in whole or in part both smaller vehicles and larger vehicles in a mixed fleet of vehicles that the defendants furnished and assigned to the named plaintiffs and those similarly situated employees to provide transportation services to the defendants' customers as part of their regular jobs when the named plaintiffs and those similarly situated employees were or will not be paid at the

Case 1:20-cv-01020-UA-JLW   Document 1   Filed 11/12/20   Page 8 of 42

overtime rate required by 29 U.S.C. § 207(a)(1) for all hours worked over 40 in the same workweek.

21.     The time period and employees covered by the collective action alleged in ¶20 above is for each workweek ending in the three chronological years immediately preceding the date on which this action was filed and continuing thereafter ending on the date final judgment in this action is entered by a U.S. District Court pursuant to the statutory class action procedure specified at 29 U.S.C. §216(b) for each such similarly situated current and/or former employee of the defendants in that same time period who files, will file, or who has filed a written consent to be a party to this action that is required by 29 U.S.C. §216(b) within the applicable statute of limitation(s) for any such workweek.

VII.    <u>FIRST RULE 23(b)(3) CLASS (NCWHA §§ 95-25.6 & 95-25.13(1)-(2))</u>

22.     The named plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), and 95-25.22, and 13 NCAC Tit. 12 §§ .0803 and .0805 that consists of the named plaintiffs and all other similarly situated current and/or former persons whom the defendants jointly and severally employed in the defendants' enterprise described in ¶¶9-19 above who were compensated on an hourly wage basis ". . . per the Fair Labor Standards Act (FLSA) exemptions test" detailed in 29 U.S.C. § 213(a)(1) rather than on a salary, and who were promised wages at page 4 of the attached copy of Pelham's Employee Handbook that for "[a]ny hours worked over 40 hours in a given work week . . . will be paid at the rate of time and a half" whether or not the employee involved

received "pre-approval from the manager", and who:   :

(a)     Performed hours worked driving the smaller and larger vehicles in Pelham's mixed fleet as part of the defendant's enterprise described in ¶¶9-19 above for any workweek ending in the two chronological years immediately preceding the date on which this action was filed and continuing thereafter until a court of competent jurisdiction enters final judgment in this action, and

(b)     Were, are and/or shall be jointly or severally employed by one or more of the defendants to perform hours worked more than, equal to, or less than forty (40) hours in the same workweek performing that same driving work when they were paid according to the number of hours worked at a straight hourly rate without promised wages "at the rate of time and a half."

23.     On information and belief, the class defined in ¶22 above of this complaint consists of in excess of 40 persons.   Joinder of all class members would be impracticable if not impossible based upon the extreme geographic dispersion of many of the class members many of whom are former employees of the defendants.

24.     The questions of law or fact which are common to the members of this class, and which predominate over any other questions affecting the individual members of this class under Rule 23(b)(3), Fed.R.Civ.P., are: (a) Whether the defendants jointly operated the enterprise that is alleged and described in ¶¶9-19 above of this complaint? (b) Whether the defendants jointly and severally employed the named plaintiffs and the class members defined in ¶¶22(a)-(b) above that they seek to represent as part of the enterprise that is

10

described in ¶¶9-19 above? (c) For the work described in ¶¶22(a)-(b) above, did one or more of the defendants disclose pursuant to N.C.Gen.Stat. §§ 95.25.2(16), 95-25.6, 95-25.13(1)-(2), and 13 NCAC § 12.0803 to the named plaintiffs and the members of the class defined in ¶¶22(a)-(b) above that the named plaintiffs seek to represent that the defendants would pay promised wages for all hours worked over 40 hours in a given work week will be paid at the rate of time and one half to all driver employees who were paid at an hourly rate of pay, by furnishing the named plaintiffs and those employees with paystubs showing their agreed upon hourly rates, and instructing them to use the company timekeeping system in order to be paid, or not paid, for any hours worked; and (d) whether the records of the defendants demonstrate that the named plaintiffs and the putative members of the class defined in ¶22(a)-(b) above performed hours worked in excess of forty (40) hours in the same workweek for which they were not fully paid all wages when due on their regular weekly payday?

25. The claim of the named plaintiffs are typical of the claims of the class of persons defined in ¶¶22(a)-(b) above in that the defendants jointly and severally employed them and those class members defined in ¶¶22(a)-(b) above in the enterprise described in ¶¶9-19 above to perform hours worked in excess of 40 hours in the same workweek driving a mixed fleet of smaller vehicles and larger vehicles and failed to pay them and those same putative class members promised wages in the amount that those weekly wages were due at their promised hourly rate of wages at time and a half for each hour or part of an hour(s) worked that the defendants jointly and severally employed the named plaintiffs and those

same class members they seek to represent to perform that same driving work when it was for hours worked over 40 hours in a given workweek.

26.     The named plaintiffs will fairly and adequately represent the interests of the class of persons defined in ¶¶22(a)-(b) above of this complaint.   The undersigned counsel for the named plaintiffs is an experienced litigator who has been name counsel for many class actions.

27.     Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class defined in ¶¶22(a)-(b) under Rule 23(b)(3).

28.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a)     The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class defined in ¶¶22(a)-(b) above, substantially diminish the interest of members of the class defined in ¶¶22(a)-(b) to individually control the prosecution of separate actions;

(b)     Many members of the class defined in ¶¶22(a)-(b) are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     Upon information and belief, there is no pending litigation against the corporate and individual defendants named in this action by the members of the class defined in ¶¶22(a)-(b) above to determine the questions presented, and, upon information and belief, the NCWHA claims alleged in this action have not been the subject of any

12

previous litigation;

(d)     It is desirable that the claims be heard in this forum because the corporate defendant's sole permanent office is located in this district, the two individual defendants reside in this district, and the cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because all defendants regularly committed the violations complained of herein, and were required to and did maintain detailed records concerning each member of the class defined in ¶¶22(a)-(b) above.

## VIII.   SECOND RULE 23(b)(3) CLASS (NCWHA §§ 95-25.6 – Holiday Pay)

29.     The named plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(1)-(2), and 95-25.22, and 13 NCAC Tit. 12 §§ .0803 and .0805 that consists of the named plaintiffs and all other similarly situated current and/or former persons whom the defendants jointly and severally employed in the defendants' enterprise described in ¶¶9-19 above who were compensated on an hourly wage basis ". . . per the Fair Labor Standards Act (FLSA) exemptions test" detailed in 29 U.S.C. § 213(a)(1) rather than on a salary, and who were promised wages as alleged in ¶43 below in the form of eight (8) hours holiday pay at page 6 of the attached copy of Pelham's Employee Handbook for all of the six (6) Holidays that are listed on that same page, and who:   :

(a)     Performed hours worked driving the smaller and/or larger vehicles in Pelham's mixed fleet as part of the defendant's enterprise described in ¶¶9-19 above for any

Case 1:20-cv-01020-UA-JLW   Document 1   Filed 11/12/20   Page 13 of 42

workweek ending in the two chronological years immediately preceding the date on which this action was filed and continuing thereafter until a court of competent jurisdiction enters final judgment in this action, and

(b)    Were, are and/or shall be jointly or severally employed by one or more of the defendants to perform actual hours worked who were paid only for the hours they actually worked one or more of the Holidays listed at that same page 6 and not paid an additional eight (8) hours holiday pay at their regular hourly rate on their regular payday for the time period that included that holiday.

30.    On information and belief, the class defined in ¶29 above of this complaint consists of in excess of 40 persons.   Joinder of all class members would be impracticable if not impossible based upon the extreme geographic dispersion of many of the class members many of whom are former employees of the defendants.

31.    The questions of law or fact which are common to the members of this class, and which predominate over any other questions affecting the individual members of this class under Rule 23(b)(3), Fed.R.Civ.P., are: (a) Whether the defendants jointly operated the enterprise that is alleged and described in ¶¶9-19 above of this complaint? (b) Whether the defendants jointly and severally employed the named plaintiffs and the class members defined in ¶¶29(a)-(b) above that they seek to represent as part of the enterprise that is described in ¶¶9-19 above? (c) For the work described in ¶¶29(a)-(b) above, did one or more of the defendants disclose pursuant to N.C.Gen.Stat. §§ 95.25.2(16), 95-25.6, 95-25.13(1)-(2), and 13 NCAC § 12.0803 to the named plaintiffs and the members of the

class defined in ¶¶29(a)-(b) above that the named plaintiffs seek to represent that the defendants would pay promised wages for all hours worked on the Holidays listed on page 6 of the attached excerpt of Pelham's Employee Handbook at each employee's regular hourly rate plus an additional eight (8) hours holiday pay; and (d) whether the records of the defendants demonstrate that the named plaintiffs and the putative members of the class defined in ¶29(a)-(b) above performed actual hours worked on one or more of those listed Holidays for which Pelham did not also pay them an additional eight (8) hours holiday pay at each employee's regular hourly rate?

32.     The claim of the named plaintiffs are typical of the claims of the class of persons defined in ¶¶29(a)-(b) above in that the defendants jointly and severally employed them and those class members defined in ¶¶29(a)-(b) above in the enterprise described in ¶¶9-19 above to perform actual hours worked on one of the Holidays listed at page 6 of the attached excerpts of the Pelham Employee Handbook but did not pay them eight (8) hours holiday pay for that same day's work as alleged in ¶¶51-52 below of this Complaint.

33.     The named plaintiffs will fairly and adequately represent the interests of the class of persons defined in ¶¶29(a)-(b) above of this complaint.   The undersigned counsel for the named plaintiffs is an experienced litigator who has been name counsel for many class actions.

34.     Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class defined in ¶¶29(a)-(b) under Rule 23(b)(3).

15

35.     A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a)     The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class defined in ¶¶29(a)-(b) above, substantially diminish the interest of members of the class defined in ¶¶29(a)-(b) to individually control the prosecution of separate actions;

(b)     Many members of the class defined in ¶¶29(a)-(b) are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c)     Upon information and belief, there is no pending litigation against the corporate and individual defendants named in this action by the members of the class defined in ¶¶29(a)-(b) above to determine the questions presented, and, upon information and belief, the NCWHA claims alleged in this action have not been the subject of any previous litigation;

(d)     It is desirable that the claims be heard in this forum because the corporate defendant's sole permanent office is located in this district, the two individual defendants reside in this district, and the cause of action arose in this district;

(e)     A class action can be managed without undue difficulty because all defendants regularly committed the violations complained of herein, and were required to and did maintain detailed records concerning each member of the class defined in ¶¶29(a)-(b) above.

IX.     <u>FACTUAL ALLEGATIONS</u>

16

36.     At all times relevant to this complaint, the Dejournette Defendants owned Pelham, and, upon information and belief, operated and used Pelham without observing any corporate formalities to effect the commercial and personal goals of the Dejournette Defendants.

37.     For varying periods of time after October 1, 2016, as alleged in ¶16 above, both of the Dejournette Defendants exercised day to day control and supervision over the driving work that the plaintiffs and the members of the collective action defined in ¶¶20-21 above and the members of the classes defined in ¶¶22(a)-(b) and 29(a)-(b) above performed for Pelham.

38.     The plaintiffs and the members of the collective action defined in ¶¶20-21 above and the classes defined in ¶¶22(a)-(b) and 29(a)-(b) above were employed by the defendants as described and alleged in ¶¶9-22 and 29 above in and around Rockingham County, North Carolina both within and without North Carolina.  As part of their work for the defendants during a substantial number of pay periods and work weeks during the time periods alleged in ¶¶9-11, 20-22, and 29 above, the plaintiffs and the members of that collective action and class action worked in excess of forty hours per work week and pay period with the knowledge of the defendants, and were not paid Holiday pay as alleged in ¶53 below.

39.     The amount of the wages that the plaintiffs and their similarly situated employee drivers received from the defendants in the form of wages at the time that those wages were due and/or paid at the end of each of those work weeks and/or pay periods

described in ¶¶20-21 above of this complaint for the hours of work in excess of forty (40) actually performed during each of those work weeks and pay periods during that same time period did not include any overtime premium in addition to the plaintiffs' regular hourly rate of $12.75/hour (from July 2018 to the present for plaintiff Hilderbrand and about the same hourly rate of plaintiff Davis) and approximately $11.50/hour (for more than a year before that for plaintiff Hilderbrand), and were substantially less than that required by the overtime wage provisions set forth in 29 U.S.C. §207(a)(1) for virtually every workweek in the time periods alleged in ¶¶9(a)-(b) and 20-21 above.

40.     The amount of promised wages that the plaintiffs and the members of the class defined in ¶¶22(a)-(b) above received from the defendants in the form of wages at the time that those wages were due and/or paid at the end of each of those work weeks and/or pay periods described in ¶¶22(a)-(b) above was less than what the defendants disclosed to the plaintiffs and the members of that class in page 4 of the attached Pelham Employee Handbook and which were required by N.C.Gen.Stat. §95-25.4 in the event that Pelham was not an employer covered by the FLSA.

41.     The amount of promised wages that the plaintiffs and the members of the class defined in ¶¶29(a)-(b) above received from the defendants in the form of wages at the time that those wages were due and/or paid at the end of each of those work weeks and/or pay periods described in ¶¶29(a)-(b) above was less than what the defendants disclosed to the plaintiffs and the members of that class in page 6 of the attached Pelham Employee Handbook for Holiday Pay for the Holidays listed on that same page.

42.     With the exception of Tuesday, June 2, 2020 when he had to miss work because of a bad toothache, plaintiff Hilderbrand worked his assigned, scheduled hours on every weekday in the pay period starting Monday, Memorial Day, May 25, 2020 and continued to do so through his last day of work on Thursday, June 4, 2020.  In order to perform that driving work, Hilderbrand had to complete driver's logs which Hilderbrand turned over to Pelham before Pelham terminated his employment.   Those records show that Hilderbrand worked more than 50 hours of work in the time period between and including May 25 and June 4, 2020.

43.     As part of its promised wages that Pelham disclosed to the plaintiffs and other similarly situated employees, Pelham promised to pay its employees eight (8) hours holiday pay for six specific holidays listed at page 6 of the attached Employee Handbook excerpt at the regular hourly rate for the plaintiffs and each similarly situated employee in addition to any wages that the plaintiffs and those same employees may have earned by actually working on any such listed holiday.

44.     As of June 4, 2020, Hilderbrand had accrued at least 74 hours of vacation when he was wrongfully discharged because of his race and color on June 4, 2020.

45.     By letter to Pelham dated August 4, 2020, Hilderbrand requested payment of all his accrued vacation pay pursuant to page 7 of the attached Employee Handbook excerpt.

46.     By letter dated August 12, 2020, Tan Hairston provided Hilderbrand with an Earnings Statement for the pay period starting May 25, 2020 and ending with June 7, 2020

in which Pelham only credited and paid Hilderbrand by direct deposit for 6 hours of regular work, no hours of holiday pay, and 74 hours of accrued but not used vacation pay.  Pelham paid that 74 hours of vacation pay to Hilderbrand pursuant to the terms of its Vacation, Sick & Scheduled Leave Policy at page 7 of the attached excerpts from its Employee Handbook which specifies that "the Company shall not pay out any remaining vacation if Employee was terminated for cause or failed to give notice resulting in job abandonment."

46A.   With that direct deposit wage payment on June 10, 2020, the defendants failed to pay plaintiff Hilderbrand for all wages that he was due at his regular rate of $12.75/hour plus eight (8) hours of holiday pay he was due for working on Memorial Day, May 25, 2020 in violation of N.C.Gen.Stat. § 95-25.6.

47.   Pelham also employed plaintiff Davis to drive on at least 3-4 of the Holidays listed at page 6 of the attached excerpt from Pelham's Employee Handbook in the time period described in ¶9(b) above.

48.   However, as with plaintiff Hilderbrand for Memorial Day 2020, Pelham did not pay Davis promised wages in the form of the Holiday Pay for eight (8) hours of the regular hourly rate of Davis on his next regular payday of plaintiff Davis when those wages were due.

49.   On information and belief, starting with the date immediately preceding the date that this action was filed and continuing through the at least the present date, for all of the Holidays listed at page 6 of the attached excerpt from Pelham's Employee Handbook, Pelham has not paid promised wages in the form of Holiday Pay to any of its driver

employees when those same driver employees also actually worked on the Holiday in question.

50.     Throughout 2020, plaintiff Hilderbrand has had and continues to have joint custody of a small child pursuant to the written terms of a child care custody agreement with the mother of Hilderbrand's child.  Those terms called for him to temporarily assume custody of his child for the entire weekend starting on Friday, May 29, 2020.

51.     During that same time period, Pelham often scheduled its drivers such a plaintiff Hilderbrand to perform driving duties for its customers as part of a weekend shift every other weekend.

52.     During that same time period, Chris Burleson (white Caucasian) was plaintiff Hilderbrand's immediate supervisor.  Mr. Burleson reported to his second line manager, Terry Johnson (white Caucasian), who was the brother-in-law of defendant Barbara Dejournette.

53.     Sometime early in the week of in or about Monday, May 18, 2020, Terry Johnson (white Caucasian), told a co-worker that he intended to "try to work Hilderbrand hard until he quit" by working him extra weekend and other hours.  Hildebrand overheard this conversation.

54.     Pursuant to Pelham policy, on Wednesday, May 27, 2020, Hilderbrand provided timely notice to defendant Barbara Dejournette that he would not be available to drive for Pelham the weekend starting May 29, 2020 because of that contractual and parental obligation.

55.     Defendant Barbara Dejournette accepted that notice on May 27, 2020 as timely, and excused Hilderbrand from working on the weekend of Friday, May 29, 2020.

56.     Nevertheless, on May 29, 2020, acting, on information and belief, at the direction of Manager Terry Johnson (Caucasian white male), the executive assistant/main secretary in Pelham's Reidsville, North Carolina office, Tan Hairston (Caucasian white female), called Hilderbrand at 5 PM on Friday, May 29, 2020, to instruct him that he was supposed to report for work the following morning on Saturday, May 29, 2020.

57.     Plaintiff Hilderbrand advised Ms. Hairston of his previous notice of Wednesday, May 27, 2020, to defendant Barbara Dejournette, and her approval of his not driving on May 29, 2020 due to his child care obligation.

58.     Ms. Hairston advised that she would check with defendant Barbara Dejournette, did so, and confirmed with her that Hilderbrand did have her approval on May 27, 2020 to not work on Saturday, May 29.

59.     Ms. Hairston then called Hilderbrand back to advise him on Friday, May 29, that defendant Barbara Dejournette had confirmed what Hilderbrand had told Ms. Hairston, that Pelham would find some other driver employee to drive that Saturday, May 29, and that Hilderbrand needn't worry about it as he was OK.

60.     Despite this, on June 4, 2020 at approximately 5:30 PM Ms. Hairston called Hilderbrand into the main Reidsville office of Pelham to receive a verbal warning regarding working the weekend shift of Saturday, May 29, 2020.

61.     When Hilderbrand reported to the office he encountered Ms. Hairston, Chris

Burleson, his immediate supervisor, and Terry Johnson, his second line supervisor.

62.    After Hilderbrand's arrival in the office, Ms. Hairston informed Hilderbrand that she was going to have to write me up and that I was going to have to sign it because Pelham had to find someone else to work the weekend of Saturday, May 29, 2020.

63.    Hilderbrand replied that he had already worked his weekend the weekend before (May 22, 2020, and Ms. Hairston's response was "you don't tell us, we tell you when to work." Ms. Hairston then asked if Hilderbrand had anything to say, and Hilderbrand replied that he didn't think it's right for yall to write him up when you told him that Barbara said it was OK because he gets his son every other weekend and you told him that you would find somebody else, don't worry about it, you're OK.

64.    Then Ms. Hairston asked Chris Burleson if he had anything to say and he stated "No". Ms. Hairston followed this exchange by asking Terry Johnson if he had anything to say. Mr. Johnson then said to me that "somebody told him that Hilderbrand said he wasn't working anymore weekends." Hilderbrand then told Mr. Johnson that was inaccurate hearsay, and that Mr. Johnson never heard Hilderbrand say that.

65.    In response, Mr. Johnson raised his voice angrily at Hilderbrand and said "look you can get your black ass out of here and don't ever bring your black ass back, somebody trying to help your black ass."

66.    Hilderbrand told Mr. Johnson to remember that he said those words to Hilderbrand, gave him Hilderbrand's office key and company phone on the spot. Then Mr. Johnson said again to Hilderbrand, "I mean it don't bring your black ass by her for

23

nothing."

67.    As detailed in pages 8-9 of the attached copy of Pelham's Employee Handbook, at the time of Hilderbrand's summary discharge, Pelham had a Progressive Disciplinary Policy to provide its employees with the opportunity to change unwanted behavior.  Mr. Johnson did not follow the progressive steps prescribed by that Discipline Policy.   The defendants also did not discharge plaintiff Hilderbrand for cause.

68.    Instead he engaged in "prohibited conduct" in the form of unwelcome speech under the Pelham Harassment Policy detailed at pages 9-11 of the attached excerpts from Pelham's Employee Handbook.  Despite the clear occurrence of this prohibited conduct in the immediate presence of Ms. Hairston and Mr. Burleson, neither of those Pelham complied with the written policy in Pelham's Harassment Policy at page 10 of the attached excerpts from Pelham's Employee Handbook that "[a]nyone who has observed inappropriate conduct MUST report it." (capitals in original).   mandatory

69.    Plaintiff Hilderbrand sought the assistance of the local branch of the NAACP in an attempt obtain redress from Pelham for this repeated June 4, 2020 instance of Prohibited Conduct by Terry Johnson on behalf of Pelham.

70.    Soon after June 4, 2020, a representative of the NAACP communicated with a management official for Pelham.  Upon information and belief, the officials whom the NAACP representative contacted included the Dejournette Defendants.

71.    Based upon that communication with the NAACP, Pelham agreed to have Terry Johnson apologize by telephone to plaintiff Hilderbrand for his Prohibited Conduct in

the form of racist speech to plaintiff Hilderbrand on June 4,2020.

72.     On June 12, 2020, acting at the direction and with the participation of, upon information and belief, one or more of the Dejournette Defendants, Tan Hairston placed a telephone call to Hilderbrand to enable Terry Johnson to apologize to Hilderbrand for his racist and deeply offensive speech to Hilderbrand.

73.     When the call connected, Tan Hairston explained the purpose of the call, and then handed the phone to Terry Johnson so that Mr. Johnson could speak with Hilderbrand.

74.     Mr. Johnson then spoke through the speaker phone arrangement on his end of the line and started to apologize for "what you thought I said" whereupon Mr. Hilderbrand immediately interrupted to say, "No, that is what you said." With that, Mr. Johnson refused to make any apology, and dropped off the line to be replaced by Tan Hairston getting on the line to affirmatively admit to Mr. Hilderbrand that Mr. Johnson had used deeply offensive and totally racist language with Mr. Hilderbrand when Mr. Hilderbrand reminded her of her physical presence when Mr. Johnson had used that offensive and deeply racist language with Hilderbrand.   Ms. Hairston then closed out the call by telling Mr. Hilderbrand that they would have to end the call now.

75.     Plaintiff Hilderbrand filed a Title VII administrative charge of discrimination on the basis and race and color on or about July 24, 2020 pursuant to 42 U.S.C. § 2000e-5(e)(1).

76.     On August 18, 2020, the EEOC issued the plaintiff his right to sue letter pursuant to 42 U.S.C. § 2000e-5(f)(1).   A copy of that right to sue letter is attached.

77.     Pelham's summary discharge on June 4, 2020 of Hilderbrand was because of his race and his color in violation of 42 U.S.C. § 2000e-2(a)(1).  Furthermore, in the alternative, even if that discharge was not because of his race and his color, Hilderbrand's race and color was a motiving factor for that discharge and its incredible harshness in violation of 42 U.S.C. § 2000e-2(m).  It was also in willful violation of and in reckless disregard of North Carolina's public policy to protect and safeguard the right and opportunity of all persons to hold employment without discrimination or abridgement on account of race or color by employers which regularly employ 15 or more employees.

78.     It was also in reckless and willful indifference to the prohibition contained in 42 U.S.C. 2000e-2(a)(1) specifying that it shall be unlawful for an employer to discharge or otherwise to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of the individual's race and color and a similar prohibition against such discrimination in the making and performance of contracts of employment on the same basis as is enjoyed by white citizens guaranteed by 42 U.S.C. § 1981.

79.     As a direct and proximate result of Pelham's discriminatory and wrongful discharge of Hilderbrand on June 4, 2020, Hilderbrand has suffered and continues to suffer the loss of substantial amounts of income and fringe benefits, including but not limited to wages, medical insurance, vacation pay, and retirement in an amount to be determined at trial.

80.     As a direct and proximate result of Pelham's discriminatory and wrongful

Case 1:20-cv-01020-UA-JLW   Document 1   Filed 11/12/20   Page 26 of 42

discharge of Hilderbrand on June 4, 2020, Hilderbrand has suffered and continues to suffer suffered damages and severe emotional distress, insomnia, and depression in an amount to be determined at trial.

81.     Based upon their long experience with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the public policy of North Carolina in North Carolina General Statutes § 143-422.2(a), at all times relevant to this action, the defendants fully understood the unlawful, racist, and deeply offensive nature of the statements that Terry Johnson made to the plaintiff Hilderbrand on and after June 4, 2020.

82.     Based upon their long experience with the requirements of the FLSA and the NCWHA, long before October 1, 2016, the defendants fully understood their wage payment obligations under the NCWHA and their obligations to pay wages at the overtime rate required by 29 U.S.C. § 207(a).

83.     As an interstate transportation provider with driver employees using its mixed fleet of smaller and larger vehicles to provide that transportation, Pelham and the Dejournette Defendants were fully aware of the U.S. Congress's June 2008 enactment of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users Technical Corrections Act of 2008, Public Law No. 110-244, 122 Stat. 1572 ("TCA"), and the provisions of § 306(a) of the TCA.

X.     FIRST CLAIM FOR RELIEF (Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §§ 1981 and 1981a)

84.     Paragraphs 6 through 9(a), 12-18, 50-81, inclusive, above are realleged and

27

incorporated herein by reference by the plaintiff Lewis A. Hilderbrand against defendant Pelham pursuant to 42 U.S.C. § 2000e-2(a)(1), 2000e-2(m), 2000e-5(f)(3), 2000e-5(g)(1), 2000e-5(g)(2)(B), 2000e-5(k), 42 U.S.C. § 1981, and 42 U.S.C. §§ 1981a(a)(1) and 1981a(b).

85.     The defendant Pelham terminated the employment of the plaintiff because of the plaintiff's race and color in violation of 42 U.S.C. §2000e-2(a)(1).

86.     In the alternative, a motivating factor in the defendant Pelham's termination of the employment of the plaintiff was the plaintiff's race and color in violation of 42 U.S.C. §2000e-2(m).

87.     The actions of the defendants that are complained of in this claim were taken and are being taken in willful and deliberate disregard of the plaintiff Hilderbrand's rights under 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981 to be free from discrimination in employment on the basis of his race and color.

88.     The actions of the defendants that are complained of in this claim were taken and are being taken with willful intent to discourage and impede plaintiff Hilderbrand's efforts to pursue the vindication of his rights under 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981 to be free from discrimination in employment on the basis of his race and color.

89.     Plaintiff Hilderbrand is an hourly worker who survives and supports his family from paycheck to paycheck.   The defendants' willful discharge of plaintiff Hilderbrand and continuing discrimination after his discharge was and is likely to cause

28

serious harm to plaintiff Hilderbrand and his ability to support his family.

90.     The defendants were fully aware of the probable and substantial economic consequences of their willful conduct, and especially of the cruel and punitive way in which defendant Pelham terminated plaintiff Hilderbrand's employment on June 4, 2020.

91.     The defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

92.     As a result of these intentional actions of the defendant Pelham, the plaintiff Hilderbrand has suffered damages and severe emotional distress, insomnia, depression, and loss of substantial amounts of income and fringe benefits, including but not limited to wages, medical insurance, vacation pay, and retirement in an amount to be determined at trial.

93.     As a result of the actions by the defendant Pelham that are alleged and described in ¶¶9, 9(a), 12-18, and 50-81 above of this Complaint in willful, wanton, and reckless disregard of and indifference to Hilderbrand's rights to be free from discrimination on the basis of his race and color in violation of 42 U.S.C. §2000e-2(a)(1) and 42 U.S.C. § 1981, the plaintiff Hilderbrand is entitled to an award of punitive damages to be determined by a jury at trial pursuant to 42 U.S.C. §§ 1981a(b)-(c).

XI.     SECOND CLAIM FOR RELIEF (Wrongful Discharge)

94.     Paragraphs 6 through 9(a), 12-18, and 50-81, inclusive, above are realleged and incorporated herein by reference by the plaintiff Lewis A. Hilderbrand pursuant to the common law of wrongful discharge in the State of North Carolina.

95.     The defendants terminated the employment of the plaintiff in violation of the public policy of the State of North Carolina under N.C.Gen.Stat. §143-422.2 which prohibits discrimination on the basis of race and color by any employer who employs more than 15 persons.

96.     The actions of the defendants that are complained of in this claim were taken and are being taken in willful and deliberate disregard of the plaintiff Hilderbrand's right under the public policy of North Carolina declared in N.C.Gen.Stat. § 143-422.2 to be free from discrimination in employment on the basis of his race and color by employers with 15 or more regular employees.

97.     The actions of the defendants that are complained of in this claim were taken and are being taken with willful intent to discourage and impede plaintiff Hilderbrand's efforts to pursue the vindication of his rights under the public policy of North Carolina established in N.C.Gen.Stat.§ 143-422.2 to be free from discrimination in employment on the basis of his race and color.

98.     Plaintiff Hilderbrand is an hourly worker who survives and supports his family from paycheck to paycheck.   The defendants' willful discharge of plaintiff Hildebrand and continuing discrimination after his discharge was and is likely to cause serious harm to plaintiff Hilderbrand and his ability to support his family.

99.     The defendants were fully aware of the probable and substantial economic consequences of their willful conduct, and especially of the cruel and punitive way in which defendant Pelham terminated plaintiff Hilderbrand's employment on June 4, 2020.

100.    The defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

101.    As a result of these intentional actions of the defendants, the plaintiff Hilderbrand has suffered damages and severe emotional distress, insomnia, depression, and loss of substantial amounts of income and fringe benefits, including but not limited to wages, medical insurance, vacation pay, and retirement in an amount to be determined at trial.

102.    As a result of the actions by the defendant Pelham that are alleged and described in ¶¶9, 9(a), 12-18, and 50-81 above of this Complaint in willful, wanton, and reckless disregard of and indifference to Hilderbrand's rights to be free from discrimination on the basis of his race and color in violation of the public policy established by N.C.Gen.Stat. § 143-422.2, the plaintiff Hilderbrand is entitled to an award of punitive damages to be determined by a jury at trial pursuant to N.C.Gen.Stat. §§ 1D-1, 1D-15(a)(3), and 1D-35(1)-(2) to punish the defendant for egregiously wrongful acts and to deter the defendants and others from committing similar wrongful acts.

XII.    THIRD CLAIM FOR RELIEF (FLSA)

103.    Paragraphs 6 through 21, 36-39, and 82-83, inclusive, above are realleged and incorporated herein by reference by the plaintiffs Lewis A. Hilderbrand and Morris Wray Davis, Jr. and the members of the collective action defined in ¶¶20-21 above against all defendants, jointly and severally, pursuant to Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

104.    The defendants did not keep or maintain any accurate payroll records with respect to the defendants' employment of the named plaintiffs and the members of the collective action defined in ¶¶20-21 above in the manner and with the information required by 29 U.S.C. §211(c) and the U.S. Department of Labor regulations promulgated under the Fair Labor Standards Act with respect to each of those time periods and workweeks described in ¶¶9-21 above of this complaint when the named plaintiffs and the members of the collective action defined in ¶¶20-21 above were employed to work for substantial time periods in excess of forty (40) hours per work week for which the defendants did not pay them the overtime wage rate required by 29 U.S.C. §207(a)(1).

105.    The defendants did not pay all wages due to the named plaintiffs and the collective group of persons defined in ¶¶20-21 above of this complaint that the named plaintiffs seeks to represent under 29 U.S.C. §216(b) at the rate required by 29 U.S.C. § 207(a) for the work described in ¶¶9-21, inclusive, and ¶¶36-39, inclusive, above of this Complaint that was part of the defendants' enterprise that is described in ¶¶9-19 above.

106.    As a result of the willful and reckless disregard of the right of the plaintiffs and the members of the collective action defined in ¶¶20-21 above to payment of wages at the overtime rate required and described in 29 U.S.C. § 207(a), the named plaintiffs and each such collective action member have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under 29 U.S.C. §216(b).

XIII.   FOURTH CLAIM FOR RELIEF (First NCWHA claim)

107.    Paragraphs 6 through 18, 22-28, 36-28, 40, inclusive, and 82 above are

realleged and incorporated herein by reference by named plaintiffs Lewis A. Hilderbrand and Morris Wray Davis, Jr., and the class of employees defined in ¶¶22(a)-(b) above pursuant to N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), 95-25.22(a) and (a1), and 13 NCAC § 12.0803.

108. At page 4 of the Employee Handbook, the defendants disclosed and employed the named plaintiffs and the members of the class defined in ¶¶22(a)-(b) with promised wages that will be paid at the rate of time and a half for any hours worked over 40 hours in a given work week for the named plaintiffs and the class defined in ¶¶22(a)-(b) above who were employed and compensated for performing hourly wage positions that was not exempt from the overtime provisions per the Fair Labor Standards Act (FLSA) exemption test.

109. The named plaintiffs and the members of the class defined in ¶¶22(a)-(b) above and described in ¶108 above were and/or will all employed by the defendants to work for a substantial number of workweeks in excess of forty (40) hours per work week whom the defendants employed and compensated for performing an hourly wage positions that were not exempt from the overtime provisions per the Fair Labor Standards Act (FLSA) exemption test but who were not paid at the rate of time and a half for all hours they worked over 40 hours in a given work week when those wages were due in violation of N.C.Gen.Stat. § 95-25.6.

110. As a result of these actions of the defendants, the named plaintiffs and the members of the class defined in ¶¶22(a)-(b) have suffered damages in the form of unpaid

33

wages, interest on those unpaid wages, and liquidated damages that may be recovered under N.C.Gen.Stat. §§95-25.22(a) and (a1).

## XIV.  FIFTH CLAIM FOR RELIEF (Second NCWHA Claim)

111.    Paragraphs 6 through 18, 29-38, 41-49, inclusive, and 82 above are realleged and incorporated herein by reference by named plaintiffs Lewis A. Hilderbrand and Morris Wray Davis, Jr., and the class of employees defined in ¶¶29(a)-(b) above pursuant to N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), 95-25.22(a) and (a1), and 13 NCAC § 12.0803.

112.    When the named plaintiffs and the class of employees defined in ¶¶29(a)-(b) were and/or will be employed by the defendants to perform driving or other work on one or more of the six (6) Holidays listed at page 6 of the attached excerpts of the Employee Handbook, part of the promised wages that the defendants disclosed to the named plaintiffs and all members of that class as part of Pelham's employment practices and policies with regard to promised wages was that the defendants would pay hourly employees like the named plaintiffs and the members of the class defined in ¶¶29(a)-(b) above eight (8) hours holiday pay at the regular hourly rate on the regular bi-weekly payday for the employee(s) involved in addition to the wages due for any hours worked on that same Holiday.

113.    As alleged in ¶¶46-49 above, the defendants did not pay the named plaintiffs or any hourly employee member of the class defined in ¶¶29(a)-(b) above any Holiday Pay as described in page 6 of the attached excerpts of the Employee Handbook when they performed actual driving work on one or more of the six (6) Holidays listed at page 6 of the same Employee Handbook.

114.    In addition, the defendants failed to pay plaintiff Hilderbrand all of his regular hourly wages when due on his regular June 10, 2020 payday for all hours he worked in the pay period starting with Monday, May 25, 2020 and ending with Sunday, June 7, 2020.

115.    As a result of these actions of the defendants, the named plaintiffs and the members of the class defined in ¶¶29(a)-(b) above have suffered damages in the form of unpaid wages, interest on those unpaid wages, and liquidated damages that may be recovered under N.C.Gen.Stat. §§95-25.22(a) and (a1).

XV.    SIXTH CLAIM FOR RELIEF (Alternative NCWHA Overtime Claim )

116.    In the alternative to the Fourth Claim for Relief alleged in ¶¶107-110 above of the complaint, in the event that the defendants' employment of the named plaintiffs and collective action defined in ¶¶20-21 is not covered by the FLSA, ¶¶6 through 18, 20-21, and 36-40, inclusive, above are realleged and incorporated herein by reference by the named plaintiffs against all defendants under N.C.Gen.Stat. §§ 95-25.4, 95-25.22(a), 95-25.22(a1), and 95-25.22(d) of the NCWHA.

117.    The defendants did not pay and will not pay all wages due when those wages were and will be due at the rate required by N.C.Gen.Stat. § 95-25.4 to the named plaintiffs for the work described in ¶¶9-18, 20-21, 36-40, and 82, inclusive, above of this Complaint in violation of N.C.Gen.Stat. §§ 95-25.4 and 95-25.6.

118.    As a result of these actions of the defendants in violation of the rights of the named plaintiffs and all of the persons described in ¶¶20-21 above under N.C.Gen.Stat. §§

95-25.4 and 95-25.6, the named plaintiffs and the members of the class described in ¶¶20-21 above have suffered damages in the form of unpaid wages, interest on those unpaid wages, and liquidated damages that may be recovered under N.C.Gen.Stat. §§95-25.22(a) and 95-25.22(a1).

XVI.   CLAIM FOR DECLARATORY RELIEF

119.   Paragraphs 6 through 118 above are realleged and incorporated herein by reference by the named plaintiffs.

120.   The parties to this action are in dispute as to their respective rights, privileges and/or obligations under the Fair Labor Standards Act, the North Carolina Wage and Hour Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1981a, and the common law tort of wrongful discharge in violation of the public policy of the State of North Carolina, assault and intentional infliction of emotional distress, and require declaratory relief as to what those respective rights, privileges, and/or obligations are.

WHEREFORE Plaintiffs Lewis A. Hilderbrand and Morris Wray Davis, Jr. respectfully request that the Court:

(a)   Grant a jury trial on all issues so triable;

(b)   Declare that the defendants have violated their obligations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and/or 2000e-2(m), 42 U.S.C. § 1981, 42 U.S.C. § 1981a, and the public policy of North Carolina codified in N.C.Gen.Stat. § 143-422.2 to hold employment without discrimination or abridgement on account of or because of race or color as required by all of those federal and state statues;

36

(c)     Declare that the defendants have violated their obligations under the Fair Labor Standards Act, 29 U.S.C. §§201 et seq., and the North Carolina Wage and Hour Act, G.S. §§95-25.1 et seq., to pay the named plaintiffs and the members of the collective and class actions they seek to represent weekly wages on a bi-weekly basis when due with the amount and at the rate of promised wages, regular wages, and wages for workweeks in which they worked more than 40 hours in the same workweek as required by the Fair Labor Standards Act and the NC Wage and Hour Act;

(d)     Award plaintiff Lewis A. Hilderbrand compensatory damages in excess of $25,000 against the defendants, Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, to compensate him for lost wages and wage-related benefits that he has lost as a direct and proximate result of his wrongful discharge in violation of the public policy of the State of North Carolina;

(e)     Award the plaintiff Lewis A. Hilderbrand compensatory damages in excess of $25,000 against the defendants, Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, to compensate him for the severe emotional distress that he suffered as a result of the intentional actions of the defendants in violation of the public policy of the State of North Carolina;

(f)     Require the defendant Pelham Transportation Corporation to remove all negative performance evaluations and inspection reports for calendar years 2018 and 2019 from the employment file for plaintiff Lewis A. Hilderbrand with the defendant Pelham Transportation Corporation;

(g)     Award the plaintiff Lewis A. Hilderbrand punitive damages in excess of $25,000 against defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, to punish those defendants for their egregiously wrongful acts in wanton and willful disregard of his rights under the common law of wrongful discharge to be free of discrimination on the basis of his race and color in his employment in violation of the public policy of North Carolina, to deter those same defendants and others from committing similar wrongful acts, and to deter and punish those same defendants for their willful and reckless disregard by those same defendants of the plaintiff's statutory rights to be free of discrimination on the basis of his race and color in his employment under 42 U.S.C. § 2000e-2(a)(1) as authorized by 42 U.S.C. §§ 1981a(a)(1) and 1981a(b)(1);

(h)     Enter judgment against defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, and in favor of the named plaintiffs and each member of the collective action defined in ¶¶20-21 above for compensatory damages against those same defendants under the Third Claim for Relief in an amount equal to the total of the unpaid overtime wages due the named plaintiffs and each member of that same FLSA collective action under 29 U.S.C. §§ 207 and 216(b) for the work described in paragraphs 9-21 and 36-39 above of this complaint, plus an equal additional amount as liquidated damages under 29 U.S.C. Section 216(b);

(i)     Enter judgment against defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, and in favor of

Case 1:20-cv-01020-UA-JLW   Document 1   Filed 11/12/20   Page 38 of 42

the named plaintiffs and each member of the class action defined in ¶¶22(a)-(b) above for compensatory damages against those same defendants under the Fourth Claim for Relief in an amount equal to the total of the unpaid overtime wages due the named plaintiffs and each member of that same NCWHA class action under N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), and 95-25.22(a), and 13 NCAC § 12.0803 for the work described in paragraphs 9-18, 22-28, 36-38, and 40 above of this complaint, plus an equal additional amount as liquidated damages under N.C.Gen.Stat. § 95-25.22(a1);

(j)     Enter judgment against defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, and in favor of the named plaintiffs and each member of the class action defined in ¶¶29(a)-(b) above for compensatory damages against those same defendants under the Fifth Claim for Relief in an amount equal to the total of the unpaid wages due the named plaintiffs and each member of that same NCWHA class action under N.C.Gen.Stat. §§ 95-25.6, 95-25.13(1)-(2), and 95-25.22(a), and 13 NCAC § 12.0803 for the work described in paragraphs 9-18, 29-38, and 41-49 above of this complaint, plus an equal additional amount as liquidated damages under N.C.Gen.Stat. § 95-25.22(a1);

(k)     In the event that the employment of the plaintiffs and the members of the collective action alleged in ¶¶20-21 above is not employment covered by the FLSA, enter judgment against defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, and in favor of the named plaintiffs and each member of the class described in ¶¶20-21 above for compensatory damages against those

39

same defendants under the Sixth Claim for Relief in an amount equal to the total of the unpaid overtime wages due the named plaintiffs and each member of that same NCWHA class action under N.C.Gen.Stat. §§ 95-25.4, and 95-25.22(a), for the work described in paragraphs 9-18, 20-21, 36-39, 82, and 116-18 above of this complaint, plus an equal additional amount as liquidated damages under N.C.Gen.Stat. § 95-25.22(a1);

(l)     Award prejudgment and post judgment interest at the highest amount authorized by applicable law on the amount of monetary damages requested in paragraphs (i) through (k) of this Prayer for Relief based upon such date(s) as may be appropriate under applicable law;

(m)     Where authorized by law, award the plaintiff both prejudgment and post-judgment interest on any other damages that may be awarded by the court at the highest rate allowed by law;

(n)     Award against the defendants Pelham Transportation Corporation, Theodore Dejournette, Jr., and Barbara Dejournette, jointly and severally, and for the named plaintiffs and the employees they seek to represent under the FLSA and the NCWHA their reasonable costs and expenses for bringing this action, including their attorney's fees, the costs, and the cost of any expert witness fees that may be reasonably required for plaintiff Hilderbrand to prove the Title VII claim of plaintiff Hilderbrand pursuant to 42 U.S.C. §§ 2000e-5(g)(1), 2000e-5(g)(2)(B) and 2000e-5(k), and a reasonable attorney's fee and the costs of the FLSA and NCHWA claims by both named plaintiffs and the employees that they seek to represent pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(o)     Award such other relief as may be just and proper in this action.

Case 1:20-cv-01020-UA-JLW   Document 1   Filed 11/12/20   Page 41 of 42

This the 12th day of November, 2020.

LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:/s/Robert J. Willis
Robert J. Willis
Attorney at Law
NC Bar #10730
(mailing address)
P.O. Box 1828
Pittsboro, NC   27312
Tel:(919)821-9031
Fax:(919)821-1763
488 Thompson Street
Pittsboro, NC   27312
Counsel for Plaintiffs
rwillis@rjwillis-law.com