**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LEWIS A. HILDERBRAND and | ) | |
| MORRIS WRAY DAVIS, JR., | ) | |
| on behalf of themselves and all other | ) | |
| similarly situated persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:20CV1020 |
| | ) | |
| PELHAM TRANSPORTATION | ) | |
| CORPORATION, THEODORE J. | ) | |
| DEJOURNETTE, JR., and | ) | |
| BARBARA J. DEJOURNETTE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' partial motion to dismiss (Docket Entry 17) and Plaintiffs' motion for leave to amend their complaint (Docket Entry 22). For the following reasons, the undersigned recommends that Defendants' motion to dismiss be granted and that Plaintiff's motion to amend be denied.

## I. BACKGROUND

Plaintiffs Lewis A. Hilderbrand and Morris Wray Davis, Jr., on behalf of themselves and other similarly situated individuals, initiated this action on November 12, 2020 against their former employer, Pelham Transportation Corporation ("Pelham"), and its owner-operators, Theodore Dejournette, Jr. ("Mr. Dejournette") and Barbara Dejournette ("Ms. Dejournette"). (*See generally* Compl., Docket Entry 1.) Later that same day, Plaintiffs filed an

amended complaint correcting a technical error in the heading of the original complaint. (Am. Compl., Docket Entry 3.) With the consent of Defendants, Plaintiffs filed a second amended complaint on January 6, 2021 to "correct some other scrivener's errors." (Docket Entry 23 at 2; 2nd Am. Compl., Docket Entry 15; Docket Entry 14 (consent to file second amended complaint by all Defendants).)[1] Pursuant to the operative second amended complaint (hereafter "the complaint"), Plaintiff Hilderbrand raises claims against Defendants for wrongful termination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), 42 U.S.C. § 1981, 42 U.S.C. § 1981a, and the public policy of North Carolina declared in N.C. Gen. Stat. § 143-422.2(a). (2nd Am. Compl. ¶ 1.) In addition, both named Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"). (*Id.* ¶¶ 2-3.) Plaintiffs Hilderbrand and Wray seek to represent similarly situated current and former Pelham employees by having the case certified as both a FLSA collective action and a class action pursuant to Federal Rule of Civil Procedure 23. (*Id.*)

On February 8, 2021, Defendants filed the foregoing partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 17.) In their original motion, Defendants sought to dismiss: 1) Plaintiff Hilderbrand's Title VII and Section 1981 claims to the extent they were asserted against Mr. and Ms. Dejournette (collectively "the Dejournettes"); 2) Plaintiff's Hilderbrand's state law wrongful discharge claim to the extent it was asserted against the Dejournettes; and 3) Plaintiffs' alternative NCWHA overtime claim

---

[1] All page numbers in this Recommendation refer to the blue page numbers at the bottom right-hand corner of each document as it appears in the Court's CM/ECF system, unless otherwise indicated.

in its entirety.  (*See* Docket Entry 18 at 1-2.)  In their response brief in opposition to Defendants' motion to dismiss, Plaintiffs do not contest dismissal of the Title VII claim against the Dejournettes, nor do they contest dismissal of their alternative NCWHA overtime claim. (*See* Docket Entry 19 at 1-2.)  Thus, the undersigned recommends deeming those claims abandoned and recommends granting Defendants' motion to dismiss as to those claims without further discussion.  *See Alston v. Becton, Dickinson & Co.,* No. 1:12CV452, 2013 WL 4539634, at *1 (M.D.N.C. Aug. 27, 2013) (deeming plaintiff's claim abandoned and granting defendant's motion to dismiss as uncontested because plaintiff failed to respond to defendant's arguments regarding the insufficiency of plaintiff's claim); *see also* M.D.N.C. LR 7.3(k) (uncontested motions "ordinarily will be granted without further notice").

Therefore, the only two issues remaining for the Court to resolve are: 1) whether Plaintiffs' complaint states a viable Section 1981 claim against the Dejournettes; and 2) whether the complaint states a viable common law claim for wrongful discharge against the Dejournettes.  (Docket Entry 20 at 5; Docket Entry 23 at 1.)  In their reply, Defendants argue that these two remaining claims should be dismissed as to the Dejournettes because Plaintiff's complaint "contains no factual allegations that the Dejournettes authorized, or were involved in, the alleged discriminatory action against Hilderbrand."  (Docket Entry 20 at 5.)

In response, Plaintiffs filed the foregoing motion seeking leave to amend their complaint.  (Docket Entry 22.)  Plaintiffs assert that their complaint already contains "express, well-pled factual allegations" concerning the Dejournette's involvement in the alleged discriminatory action against Plaintiff Hilderbrand, but that their proposed amendments to the complaint will resolve any doubts on this issue.  (Docket Entry 23 at 3-4.)  Defendants

filed a response in opposition to Plaintiff's motion to amend (Docket Entry 24) and Plaintiffs filed a reply (Docket Entry 25).

## II. RELEVANT FACTUAL ALLEGATIONS

The two remaining claims at issue in Defendants' partial motion to dismiss are predicated on allegations in Plaintiffs' complaint concerning the discriminatory termination of Plaintiff Hilderbrand's employment with Defendant Pelham. Prior to his termination on June 4, 2020, Plaintiff Hilderbrand, an African American male, had been employed by Pelham as a driver for more than seven years. (2nd Am. Compl. ¶ 9.) Pursuant to a joint custody agreement with the mother of his child, Plaintiff Hilderbrand had temporary custody of his child the weekend of Friday, May 29, 2020. (*Id.* ¶ 50.) Pelham often scheduled its drivers to work weekend shifts every other weekend. (*Id.* ¶ 51.) On Wednesday, May 27, 2020, Plaintiff Hilderbrand timely informed Ms. Dejournette that due to his parental obligations, he would be unable to work over the upcoming weekend. (*Id.* ¶ 54.) Ms. Dejournette accepted Plaintiff Hilderbrand's notice and excused him from work on those days. (*Id.* ¶ 55.)

Despite his communications with Ms. Dejournette, on Friday, May 29, 2020, Pelham executive assistant Tan Hairston called Plaintiff Hilderbrand and instructed him to report to work the following morning. (*Id.* ¶ 56.) Plaintiffs allege that Ms. Hairston was acting at the direction of manager Terry Johnson, the brother-in-law of Ms. Dejournette. (*Id.* ¶ 52, 56.) Plaintiff Hilderbrand explained to Ms. Hairston that he had already spoken with Ms. Dejournette about his prior obligations and that she had excused him from working over the weekend. (*Id.* ¶ 57.) Ms. Hairston confirmed this with Ms. Dejournette and then indicated to Plaintiff Hilderbrand that he did not need to report for work on Saturday. (*Id.* ¶ 59.)

However, Ms. Hairston called Plaintiff Hilderbrand into Pelham's main office on June 4, 2020. (*Id.* ¶ 60.) "When Hilderbrand reported to the office he encountered Ms. Hairston, Chris Burleson, his immediate supervisor, and Terry Johnson, his second line supervisor." (*Id.* ¶ 60.) Ms. Hairston informed Plaintiff Hilderbrand that he was being written up for not working the weekend of May 29, 2020. (*Id.* ¶ 62.) Plaintiff Hilderbrand explained that he had worked the weekend of May 23, 2020 and had obtained Ms. Dejournette's permission not to work the weekend of May 29. (*Id.* ¶ 63.) Mr. Johnson then said that he had heard that Plaintiff Hilderbrand had indicated that "he wasn't working anymore weekends." (*Id.* ¶ 64.) Plaintiff Hilderbrand denied having said this, at which point Mr. Johnson became angry and shouted at Plaintiff Hilderbrand to "get your black ass out of here and don't ever bring your black ass back . . . ." (*Id.* ¶ 65.) In response, Plaintiff Hilderbrand turned over his office key and company phone. (*Id.* ¶ 66.) Mr. Johnson then repeated, "I mean it don't bring your black ass by [here] for nothing." (*Id.*)

Following his termination, Plaintiff Hilderbrand sought the assistance of the NAACP to address Mr. Johnson's conduct. (*Id.* ¶ 69.) A NAACP representative reached out to "a management official for Pelham" (believed to be one of the Dejournettes) and scheduled a phone call in which Mr. Johnson would apologize to Plaintiff Hilderbrand for his racist speech. (*Id.* ¶¶ 70-71.) On June 12, 2020, "at the direction and with the participation of" the Dejournettes, Ms. Hairston facilitated a call between Plaintiff Hilderbrand and Mr. Johnson. (*Id.* ¶ 72.) During the call, however, Mr. Johnson refused to make an apology. (*Id.* ¶ 74.) Plaintiff Hilderbrand filed a Title VII administrative charge of discrimination on the basis and race and color with the Equal Employment Opportunity Commission ("EEOC") on or about

July 24, 2020.  (*Id.* ¶ 75.)   The EEOC was "unable to conclude that the information obtained establishes violations of the statutes," but issued Plaintiff a right to sue letter on August 18, 2020.  (*Id.* ¶ 76; *see also* Docket Entry 1-8.)

## III. DISCUSSION

### A.  **Defendants' Motion to Dismiss**

Defendants move to dismiss Plaintiffs' Section 1981 and wrongful discharge claims against the Dejournettes pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket Entry 17, Docket Entry 20 at 1-2.)   A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999).   A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct."   *Id.*; *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted).   The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).   In other words, the standard requires a plaintiff to articulate facts, that, when

accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)).

### 1. Plaintiff Hilderbrand's Section 1981 claim against the Dejournettes

"Section 1981 provides, in relevant part, that 'all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens,' and guards generally against race-based discrimination in the workplace." *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021) (alterations in original) (quoting 42 U.S.C. § 1981). Section 1981 "can be violated only by intentional discrimination." *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *see also Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action . . . must be founded on purposeful, racially discriminatory actions.").

Defendants are correct that "a claim for individual liability under § 1981 'must be predicated on the actor's personal involvement.'" *Marshall v. C & S Rail Servs., LLC*, No. 1:19CV986, 2021 WL 1341801, at *6 (M.D.N.C. Apr. 9, 2021) (quoting *Hawthorne v. Va. State Univ.*, 568 F. App'x 203, 204-05 (4th Cir. 2014)); *see also Benjamin v. Sparks*, 173 F. Supp. 3d 272, 283 (E.D.N.C. 2016) ("[Section 1981] imposes liability on an individual only for his or her own intentional actions that caused an infringement of [S]ection 1981."). Furthermore,

> [i]n analyzing whether a plaintiff has plausibly alleged sufficient individual action to allow a section 1981 claim to proceed, courts may examine whether the individual defendant had the capacity to terminate the plaintiff's employment. Courts also may examine whether plaintiff plausibly alleges direct evidence of the defendant's racially discriminatory animus and shows that the individual defendant took part in the adverse employment action.

*Id.* (internal citations omitted).

Defendants argue that Plaintiff's Section 1981 should be dismissed because Plaintiffs' complaint "does not allege facts indicating that the Dejournettes directed or had any personal involvement in the alleged discriminatory action of which Hilderbrand complains." (Docket Entry 20 at 7 (citing *Benjamin v. Sparks*, 173 F. Supp. at, 283, 286).) In support of this argument, Defendants point out that neither of the Dejournettes attended the June 4, 2020 meeting when the alleged discriminatory statements were made by Mr. Johnson, nor were they aware of that meeting or the disciplinary action that occurred during it. (*Id.* at 8.)

In response, Plaintiffs argue that the complaint alleges that the Dejournettes "had and exercised the authority to terminate Mr. Hilderbrand." (Docket Entry 19 at 7 (citing 2nd Am. Compl. ¶ 16(g) ("The Dejournette Defendants had and exercised the authority on a day to day basis to . . . [d]etermine when and on what basis to terminate the employment of the Plaintiffs

and any other employee of Pelham.").)  Plaintiffs point out that Ms. Dejournette excused Plaintiff from work the weekend of May 29, 2020, "which was the immediate pretext for the discriminatory actions by Terry Johnson."  (*Id.* at 8 n.4.)  Finally, Plaintiffs argue that the Dejournettes "directed and participated in" the June 12, 2020 call between Plaintiff Hilderbrand and Mr. Johnson and by doing so, ratified Mr. Johnson's refusal to apologize for or retract his discriminatory statements.  (*Id.* at 8 (citing 2nd Am. Compl. ¶¶ 71-74.).)

The undersigned agrees with Plaintiffs that allegations in the complaint sufficiently establish that the Dejournettes, as owner-operators and corporate officers of Pelham, had the inherent authority to terminate Plaintiff's employment with the company.  However, the complaint does not indicate that their exercise of such authority caused Plaintiff's termination or that they had any direct involvement in Mr. Johnson's decision to terminate Plaintiff Hilderbrand's on June 4, 2020.  The Dejournettes were not present at that meeting and, according to Plaintiff's response brief, only became aware of Mr. Johnson's actions a few days later when they were contacted by Plaintiff Hilderbrand's NAACP representative.  (Docket Entry 19 at 4 (citing 2nd Am. Compl. ¶ 70).)  Beyond this, the complaint does not contain allegations that the Dejournettes themselves acted with discriminatory animus towards Plaintiff at any point.  In fact, the only actions allegedly taken by the Dejournettes in connection with Plaintiff Hilderbrand's termination are that Ms. Dejournette excused Plaintiff Hilderbrand from working on the weekend of May 29, 2020 and that the Dejournettes were involved in coordinating a call between Plaintiff Hilderbrand and Mr. Johnson on June 12,

2020 so that an apology could be made.[2]  (2nd Am. Compl. ¶¶ 54-55, 70, 72.)  If anything, these actions demonstrate an intent to accommodate Plaintiff's parental obligations and some level of disapproval of Mr. Johnson's behavior.   In the absence of any allegation that the Dejournettes were present to participate at the June 4, 2020 meeting or were otherwise aware or involved in the alleged discriminatory actions of Mr. Johnson at the time they occurred, the complaint fails to state a Section 1981 claim against the Dejournettes.  *See Dawson v. Washington Gas Light Co.*, No. 1:18-CV-971, 2019 WL 692803, at *4 (E.D. Va. Feb. 19, 2019) (plaintiff stated a plausible claim for Section 1981 individual liability against a second-level supervisor who "was well aware of [another defendant's ongoing discriminatory] actions, as well as Plaintiff's opposition activity, participated in a meeting where Plaintiff attempted to resolve the issues, and did nothing to prevent [the other defendant] from issuing discipline against Plaintiff, thus ratifying his conduct.").

Plaintiffs' contention that the facts as alleged establish that the Dejournettes "authorized and participated in Hilderbrand's termination" to a degree sufficient to establish their individual liability in unpersuasive.  (Docket Entry 19 at 8-9.)   Again, "only intentional actions by an individual that cause violations of Section 1981 may be used to impose liability." *Dawson,* 2019 WL 692803, at *4.  Upon a careful review of the complaint, the undersigned simply cannot identify allegations of intentional, affirmative acts of discrimination performed

---

[2] The precise allegation from the complaint describing the Dejournette's involvement in the apology call is that: "On June 12, 2020, acting at the direction and with the participation of, upon information and belief, one or more of the Dejournette Defendants, Tan Hairston placed a telephone call to Hilderbrand to enable Terry Johnson to apologize to Hilderbrand for his racist and deeply offensive speech to Hilderbrand." (2nd Am. Compl. ¶ 72.)  It is unclear from this sentence whether the Dejournettes were actually on the call.  If they were, they apparently did not make any statements to Plaintiff Hilderbrand about Mr. Johnson's conduct.

by the Dejournettes. The undersigned does not find that the Dejournette's after-the-fact failure to reinstate Plaintiff Hilderbrand or take further corrective action constitutes the type of direct personal involvement required for individual liability under Section 1981. *See Tibbs v. Baltimore City Police Dep't,* No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012) ("[Individual liability under Section 1981] only applies where the act or omission resulting in the infringement of rights was intentionally caused by the supervisor and where the Plaintiff makes an affirmative showing of that fact."): *Hawthorne v. Virginia State Univ.*, 568 F. App'x 203, 204-05 (4th Cir. 2014) ("[T]o make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . .") (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). Plaintiffs simply have not shown that an intentional act or omission by either of the Dejournettes *caused* the allegedly discriminatory termination perpetrated by Mr. Johnson, nor can the Court infer from their alleged conduct that the Dejournettes intended for Mr. Johnson to discriminate against Plaintiff Hilderbrand. The Dejournette's failure to prevent Mr. Johnson from violating harassment and disciplinary policies in the Pelham employee handbook (*see* 2nd Am. Compl. ¶¶ 67-68) and their failure to take a more corrective response after the violation occurred are the types of omissions that other courts have found insufficient for individual liability under Section 1981. *See, e.g., Carson v. Giant Food, Inc.,* 187 F. Supp. 2d 462, 483 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.,* 68 F. App'x 393 (4th Cir. 2003) ("Plaintiffs have only alleged that the individual defendants were aware of racial problems . . . in the workplace after they occurred and did not respond properly. There is no evidence that any of the individual defendants directed, participated in or even approved of

intentional discrimination."); *Whidbee,* 223 F.3d at 75 (2d Cir. 2000) ("At most, the [owners and principal shareholders of the restaurant] were negligent in maintaining their restaurant's anti-discrimination policy. Even if this were the case, such negligence does not constitute the personal involvement or affirmative link necessary to support a claim of individual liability.") (internal quotations omitted). For these reasons, the undersigned recommends granting Defendants' motion to dismiss as to Plaintiff Hilderbrand's Section 1981 claim against the Dejournettes.

### 2. Plaintiff Hilderbrand's wrongful discharge claim against the Dejournettes

Plaintiff Hilderbrand alleges that Defendants terminated his employment "in violation of the public policy of the State of North Carolina under N.C. Gen. Stat. §143-422.2 which prohibits discrimination on the basis of race and color by any employer who employs more than 15 persons." (2nd Am. Compl. ¶ 95.) "To state a claim for wrongful discharge in violation of public policy, an employee 'has the burden of pleading . . . that [his] dismissal occurred for a reason that violates public policy." *Wilkes v. Argueta*, No. 1:16CV260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (ellipses in original) (quoting *Salter v. E & J Healthcare, Inc.*, 575 S.E.2d 46, 51 (N.C. Ct. App. 2003)). The Supreme Court of North Carolina has held that "public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 169 (N.C. 1992). As referenced by Plaintiff Hilderbrand's complaint, the North Carolina's Equal Employment Practices Act ("NCEEPA") provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race

[or color] by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2.

Defendants argue that this claim should be dismissed as to the Dejournettes because "[a] common law wrongful discharge claim brought pursuant to an alleged violation of the NCEEPA can be asserted only against an employer and not against the Dejournettes in their individual capacities." (Docket Entry 18 at 9; *see also* Docket Entry 20 at 7 ("North Carolina courts do not recognize wrongful discharge claims against individuals.").) Indeed, courts interpreting the NCEEPA have repeatedly held that "an action for wrongful discharge may be brought only against an employer, not individuals in their individual capacities." *Howell v. N. Carolina Cent. Univ.*, No. 1:16CV576, 2017 WL 2861133, at *13 (M.D.N.C. July 5, 2017) (citing *Lorbacher v. Hous. Auth. of City of Raleigh*, 493 S.E.2d 74, 79 (N.C. Ct. App. 1997) *overruled on other grounds, Riley v. Debaer*, 547 S.E.2d 831, 834-35 (N.C. Ct. App. 2001)); *see also, e.g., Gibson v. Corning Inc.,* No. 5:14-CV-105-BO, 2015 WL 1880188, at *4 (E.D.N.C. Apr. 13, 2015) ("[A] claim for wrongful discharge under North Carolina law cannot be brought against an individual—a plaintiff may only bring suit against his employer for wrongful discharge."); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 726 (W.D.N.C. 2012) ("Pursuant to established North Carolina law, 'a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents . . . .'") (quoting *Sampson v. Leonard*, No. 4:10–121, 2011 WL 129634, at *3 (E.D.N.C. Jan. 12, 2011)); *Arbia v. Owens-Illinois, Inc.*, No. 1:02 CV 00111, 2003 WL 21297330, at *7 (M.D.N.C. June 4, 2003) ("NCEEPA does not apply to an employer's agents; rather, employers are the only covered entity.").

In their response, Plaintiffs argue that Mr. Hilderbrand's wrongful discharge claim against the Dejournettes is proper given the couple's status as co-owners and corporate officers of Defendant Pelham Transportation Corporation. (Docket Entry 19 at 10.) In making this argument, Plaintiffs reply primarily on this Court's analysis in *Alexander v. Diversified Ace Servs. II, AJV*, No. 1:11CV725, 2014 WL 502496, at *20 (M.D.N.C. Feb. 7, 2014) (Beaty, J.) where this Court allowed a wrongful discharge claim to proceed against the individual defendant who "own[ed] and/or manage[d]" the company that had employed the plaintiff. In *Alexander*, however, this Court's analysis of the defendant's individual liability focused on the fact that he was a partner in a joint venture and "the torts of one member of a joint venture may be imputed to another member of the same joint venture." 2014 WL 502496, at *7 (citing *Halifax Reg'l Med. Ctr., Inc. v. Brown*, 743 S.E.2d 70, 72 (N.C. Ct. App. 2013)); *see also Magaha v. W & B Trucking, Inc.*, No. 115CV00159MOCDLH, 2015 WL 8759260, at *5 (W.D.N.C. Dec. 14, 2015) (discussing *Alexander* and concluding that "[t]he findings as to individual liability in that case hinged on the fact that the Defendant employer was a joint venture."). Joint venture liability "coupled with" the plaintiff's allegations that the defendant had told her that "her complaints were a disruption of *his* business, and because of that he was firing her" led this Court to conclude that that the defendant could qualify as an employer for purposes a wrongful discharge claim. *Alexander*, 2014 WL 502496, at *7 (emphasis in original).

Here, Plaintiffs' complaint does not allege that Pelham Transportation Corporation was a joint venture such that the Dejournettes would be jointly and severally liable for the acts of any member of the venture. (*See generally* 2nd Am. Compl.) On the contrary, Plaintiffs allege that Pelham is "a closely held, for profit, corporation," and that the Dejournettes are

the owner-operators of the corporation and serve as its president and vice president. (*Id.* ¶¶ 12, 14.) Plaintiffs have not made other factual allegations that support piercing the corporate veil. *See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 685 (4th Cir. 1976) (listing factors relevant to support veil-piercing including undercapitalization and disregard of corporate formalities); *Burnette v. Austin Med., Inc.,* No. 1:11CV52, 2011 WL 1769445, at *5 (W.D.N.C. Apr. 14, 2011), *report and recommendation adopted*, No. 1:11CV52, 2011 WL 1754166 (W.D.N.C. May 9, 2011) ("Substantial ownership of a corporation by one individual is not sufficient to pierce the corporate veil.") (citing *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988)). Thus, the Dejournette's ownership interest in Pelham and their roles as corporate directors are not enough to establish their individual liability for Plaintiff Hilderbrand's wrongful discharge claim. *See Di Wang v. WOW Brows,* No. 1:14CV566, 2014 WL 5808370, at *3 (M.D.N.C. Nov. 7, 2014) ("Plaintiffs' allegations of an ownership interest, without more, fail to subject [defendants who were the owners and/or general managers of the corporate defendant's operations] to liability under NCEEPA."); *Burnette,* 2011 WL 1769445, at *5 (dismissing wrongful discharge claim where plaintiff failed to plead "sufficient factual allegations supporting a claim that the Court should disregard the corporate form of [the corporate defendant] and hold its sole owner liable under . . . North Carolina law"); *Magaha,* 2015 WL 8759260, at *5 (dismissing wrongful discharge claims against a trucking company's president and vice president because plaintiff "made no allegations whatsoever regarding Defendants being involved in a joint venture or other corporate form that would raise a question as to whether individual liability was appropriate").

In sum, the undersigned finds that Plaintiffs' arguments regarding the Dejournette's individual liability are without merit because the allegations here are clearly distinguishable from the facts present in *Alexander* that allowed for the possibility of individual liability. The undersigned therefore recommends that Defendants' motion to dismiss be granted as to Plaintiff Hilderbrand's wrongful discharge claim insofar as it is raised against the Dejournette Defendants as individuals.

## B. Plaintiffs' Motion to Amend

In response to the issues raised by Defendants in their motion to dismiss regarding the Dejournettes' individual liability, Plaintiffs seek the Court's permission to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a). (Docket Entry 22.) In support of their motion to amend, Plaintiffs have filed redlined and clean versions of their proposed Third Amended Complaint. (3rd Prop. Am. Compl., Docket Entry 22-2; Docket Entry 22-1.) Once the time for amending as a matter of course has passed (as it has here), Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) further states that "[t]he court should freely give leave when justice so requires." *Id.* Granting a motion to amend a complaint is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). An amended complaint is futile if it cannot

withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); thus, the Court may deny the motion. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (addition of negligence claim was futile because case would not survive motion to dismiss).

In their brief in support of their motion to amend, Plaintiffs refer back to Defendants' primary argument in their motion to dismiss briefings that the operative complaint in this case does not contain factual allegations that the Dejournettes authorized, or were involved in, the alleged discriminatory actions against Plaintiff Hilderbrand. (Docket Entry 23 at 3 (referencing Docket Entry 20 at 5).) Plaintiffs first argue that, read in a light most favorable to them, the complaint already contains "both express, well-pled factual allegations" that defeat Defendants' argument and, somewhat confusingly, ask the Court to construe the complaint "in the way suggested by the proposed express changes" *without* amending it. (*Id.*) In the alternative, Plaintiffs seek leave to formally amend their complaint in the way they have proposed, which they claim "will resolve any doubt that the Dejournettes authorized, or were involved in, the alleged discrimination against Hilderbrand." (*Id.* at 4.)

In opposition, Defendants argue that Plaintiffs' proposed amendments are futile because they do not cure the pleading defects identified in their motion to dismiss briefing. (Docket Entry 24 at 1.) Defendants contend that the proposed amendments still fail to show that the Dejournettes directed, authorized, or participated in the termination of Plaintiff Hilderbrand because of his race or color. (*Id.* at 2.)

The undersigned agrees with Defendants that the proposed amendments in Plaintiffs' proposed Third Amended Complaint still fail to state a claim for individual liability against the

Dejournettes. Upon a careful review of the Third Amended Complaint, the undersigned has considered in particular the following proposed amendments (in italics) regarding the Dejournettes' conduct:

1. Plaintiffs now allege that Ms. Hairston was acting "*pursuant to the instructions of the Dejournette Defendantes*" when she called Plaintiff Hilderbrand into the office on June 4, 2020 "to receive a verbal warning regarding working the weekend shift of Saturday, May 30, 2020." (Prop. 3rd Am. Compl. ¶ 60.)

2. Regarding the allegedly discriminatory statements and termination of Plaintiff Hilderbrand by Mr. Johnson on June 4, 2020, Plaintiffs now allege that "*the Dejournette Defendants became aware of this prohibited conduct within a few hours or less after the moment that it occurred. Nevertheless, upon information and belief, they chose to reject any affirmative action to correct, modify or rescind it.*" (*Id.* ¶ 68.)

3. When a representative from the NAACP contacted Pelham about Plaintiff Hilderbrand's termination, "*one of the things discussed by the NAACP representative with the Dejournette Defendants was the immediate reinstatement of the Plaintiff.*" (*Id.* ¶ 70.)

4. "*[T]he Dejournette Defendants* determined that Pelham would agree to have Terry Johnson apologize by telephone" to Plaintiff Hilderbrand for his speech and actions on June 4, 2020 "*as part of a process of attempting to correct or mitigate that speech and conduct.*" (*Id.* ¶ 71.)

5. Plaintiffs now repeatedly refer to "actions" taken by all Defendants (including the Dejournettes) "*to maintain [Plaintiff's] discharge after that date.*" (*Id.* ¶¶ 77-80.)

Regarding Plaintiff Hilderbrand's Section 1981 claim, the undersigned has already determined herein that the currently operative Second Amended Complaint fails to sufficiently allege that the Dejournettes were directly involved in Plaintiff Hilderbrand's termination or that they ever took any intentionally discriminatory action towards him, as would be required for individual liability. (*See* Section II.A.1 *supra.*) The additional allegations contained in Plaintiffs' proposed Third Amended Complaint do not compel a different result. The allegation that the Dejournettes intended for Plaintiff Hilderbrand to receive a verbal warning regarding his weekend work in no way establishes that they intended for Mr. Johnson to use

racist language against him or terminate him on account of his race or color. (*See id.* ¶ 60.) Furthermore, the proposed allegations clarify that the Dejournettes were not aware of Mr. Johnson's actions at the time they occurred, and that the Dejournettes only learned about what had happened several hours after the fact. (*See id.* ¶ 68.)

Plaintiffs argue in their reply brief that their proposed amendments are not futile because they have alleged that the Dejournettes "intentionally circumvented the application of Pelham's Harassment Policy . . . and ratified Johnson's discriminatory termination." (Docket Entry 25 at 4.) Plaintiffs contend that the Dejournette's failure to reinstate Plaintiff Hilderbrand after his termination or take other corrective measures amounts to an authorization or ratification of Mr. Johnson's conduct that is sufficient for establishing individual liability against them. (*See id.* at 5-7.) In support of this argument, Plaintiffs point to two cases which they contend stand for the proposition that "immediate direction or participation [in the discriminatory action] are not required for supervisory liability under Section 1981 or North Carolina common law." (*Id.* at 5 (citing *Thomas v. Freeway Foods, Inc.,* 406 F. Supp. 2d 610, 625 (M.D.N.C. 2005); *Slocumb v. Waffle House, Inc.*, 365 F. Supp. 2d 1332, 1341-42 (N.D. Ga. 2005)).) However, both of these cases involve a determination of whether an *employer* can be held liable in a Section 1981 action for the acts of its employees pursuant to principles of agency law. *See Thomas*, 406 F. Supp. 2d at 625 ("[A]n employer may not be held liable for a server's misconduct unless the plaintiff produces evidence that the management ratified or approved of the discriminatory acts of the server."); *Slocumb*, 365 F. Supp. 2d at 1341 ("Waffle House's liability for the alleged discriminatory conduct is evaluated under agency law."). Plaintiffs have not provided the Court with any authority indicating that the

standard applied when considering an employer's liability is interchangeable with the standard of liability for individuals. *See Turley v. ISG Lackawanna, Inc.,* 960 F. Supp. 2d 425, 440 (W.D.N.Y. 2013), *aff'd in part, vacated in part*, 774 F.3d 140 (2d Cir. 2014) ("Individual liability [under Section 1981], as opposed to corporate or employer liability, is analyzed under a slightly different standard."). In sum, Plaintiffs briefs do not persuade the undersigned that the actions taken by the Dejournetes prior and subsequent to the allegedly discriminatory acts of Mr. Johnson are enough to establish the type of direct, personal involvement that the Fourth Circuit requires for individual Section 1981 liability.

As to Plaintiffs' wrongful discharge claim against the Dejournettes in their individual capacity, again, the undersigned does not find that the proposed Third Amended Complaint addressed the deficiencies identified in the analysis above. (*See* Section II.A.2 *supra.*) Plaintiffs do not cite to a single case in their briefs in support of their motion to amend that even addresses the standard for individual liability in wrongful discharge claims, much less provides instruction on whether an allegedly insufficient after-the-fact response to discriminatory actions taken by other employees may go towards establishing the individual liability of owner-operators of a corporation. (*See generally* Docket Entries 23, 25.) North Carolina courts have made clear that "a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents." *Iglesias v. Wolford*, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008) (citing *Garner v. Rentenbach Constructors, Inc.*, 515 S.E.2d 438, 439-41 (N.C. 1999); *Sides v. Duke University*, 328 S.E.2d 818, 826-27 (N.C. Ct. App. 1985), *overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420 (N.C. 1997)). Plaintiffs have not established or argued that the Dejournettes should be considered Plaintiff Hilderbrand's

employer for purposes of his wrongful discharge claim or otherwise argued that the corporate veil of Defendant Pelham should be pierced.

Accordingly, the undersigned finds that even in light of Plaintiffs' proposed amendments, their Section 1981 and wrongful discharge claims against the Dejournettes as individuals fail to state a claim for relief. The undersigned thus recommends that Plaintiffs' motion to amend be denied as futile.

## IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the partial motion to dismiss filed by Defendants (Docket Entry 17) be **GRANTED** in its entirety. Plaintiffs' Title VII claim against Defendants Theodore and Barbara Dejournette and Plaintiffs' alternative NCWHA overtime claim against all Defendants should be dismissed as uncontested. Plaintiffs' Section 1981 and wrongful discharge claims against Defendants Theodore and Barbara Dejournette should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion to amend (Docket Entry 22) be denied as futile.

Joe L. Webster
United States Magistrate Judge

June 30, 2021
Durham, North Carolina