IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEWIS A. HILDERBRAND and MORRIS WRAY DAVIS, JR., on behalf of themselves and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> PELHAM TRANSPORATION CORPORATION, THEODORE J. DEJOURNETTE, JR., and BARBARA J. DEJOURNETTE, <br><br> Defendants. | 1:20-CV-1020 |

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This matter is before the court on the parties' joint consent motion for approval of a settlement of claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Doc. 38.)  Based on the parties' filings and for the reasons that follow, the motion will be granted.

I.  SETTLEMENT

Plaintiffs' FLSA claims were advanced in the second amended complaint as a collective action; however, Plaintiffs have yet to move for certification.  (Doc. 15 at ¶ 2.)  Therefore, the court must analyze the proposed settlement through two lenses –- the due process analysis required by Shelton v. Pargo, Inc., 582 F.2d 1298 (4th Cir. 1978), and the "*bona fide* dispute" analysis required by

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982).

    A.  **Shelton and Due Process**

Where the parties enter into a settlement agreement before the court rules on a request for certification, a district court "after a careful hearing," must first "determine what 'claims are being compromised' between a plaintiff and defendant." Shelton, 582 F.2d at 1314.  The court must then address "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members."  Id.  If the court "has found neither collusion nor prejudice, it is within the discretion of the District Court, under the facts of the particular case, to approve the dismissal without requiring a certification determination . . . as mandated by [Federal Rule of Civil Procedure] 23(e)."  Id.

Pursuant to both the FLSA and the North Carolina Wage and Hour Act ("NCWHA"), Plaintiffs are entitled to have the amount of their unpaid minimum wages or overtime compensation doubled as liquidated damages.  29 U.S.C. § 216; N.C. Gen. Stat. § 95-25.22(a1); see Burnley v. Short, 730 F.2d 136, 140 (4th Cir. 1984) (discussing the FLSA's "double damages provision").  In total, for all six individual claimants, this would result in potential

recovery of $28,030.53.[1]  (Doc. 38-3 at ¶ 8.)  Pursuant to the terms of the proposed settlement agreement, the claimants will receive a total of $23,702.75.[2]  (Doc. 42-1 at ¶ 4.)  Plaintiffs will recover roughly 85% of the total value of their claims. Nothing about this amount or procedure shows "unfair personal aggrandizement," particularly in light of the Plaintiffs foregoing 15% of their possible claim for the assurance and certainty brought by the Settlement Agreement.  Shelton, 582 F.3d at 1314.

Additionally, there is no evidence that this Settlement Agreement would prejudice putative class members.  As the Settlement Agreement has occurred prior to class certification, the Settlement Agreement is not binding on absent class members. See id. at 1314-15 (noting that the court should focus on whether the Settlement Agreement is the product of collusion and give "less weight to the possibility of prejudice to absent putative class members," because "a pre-certification dismissal does not legally bind absent class members." (internal quotations omitted)).

---

[1] There are seven total Plaintiffs in this case.  However, Robert Eugene Settle has no individualized claims because Defendants "provided virtually no payroll records for the limited time period" that Settle was employed by the Defendants within the three-year statute of limitations period under the FLSA.  (Doc. 38-3 at ¶ 7.)

[2] The Settlement Agreement reflects a total of $21,702.75. (Doc. 38-1 at 2.)  In an updated declaration, Plaintiffs' counsel represents that the sum in the Settlement Agreement incorrectly lists the amount to be paid to Plaintiff Womble as $9,678.44 when it should be $12,177.40 after factoring in additional payments made to Womble.  (Doc. 42-1 at ¶ 4.) Therefore, the total amount recovered by Plaintiffs is $23,702.75.

3

Further, there is no evidence of collusion between the parties. This litigation has persisted since November 2020, and the record reflects that the parties faithfully and diligently litigated the claims involved in this case from that point until the parties reached the proposed Settlement Agreement during mediation over a year later in December 2021. (Docs. 1, 37.) Given the lack of any evidence to the contrary, the Settlement Agreement satisfies the second Shelton requirement –- that it be free from collusion.

Shelton requires the pre-certification Settlement Agreement be a product that is free from the plaintiffs' "unfair personal aggrandizement," free from collusion among the parties, and that refrains from prejudicing absent putative class members. 582 F.2d at 1314. Because the Plaintiffs' awards pursuant to the Settlement Agreement are reasonable given the possible amount of damages afforded to them pursuant to the FLSA and NCWHA, there is no evidence of collusion. Moreover, the putative class members are not prejudiced because this Settlement Agreement is not binding over any claims they may bring against these Defendants in the future. The Settlement Agreement therefore satisfies the Shelton analysis.

### B. Lynn's Food Stores Analysis

To approve a settlement under the FLSA, the court must determine whether it is a fair and reasonable compromise of disputed claims and issues arising from a *bona fide* dispute raised

4

pursuant to the act. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982); Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007), superseded on other grounds as recognized by Whiting v. The Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011). Under § 216(b) of the act, when an action is brought by an employee against his employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that it is fair and reasonable. Lynn's Food Stores, 679 F.2d at 1353-54. Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." Taylor, 493 F.3d at 460 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114–16 (1946)). "[E]mployees cannot waive their right to . . . overtime wages [under the FLSA] unless such a settlement is overseen by the Department of Labor or approved for fairness and reasonableness by a district court." Boone v. City of Suffolk, Va., 79 F. Supp. 2d 603, 605 n.2 (E.D. Va. 1999) (citing Lynn's Food Stores, 679 F.2d at 1355). Thus, courts must determine that an FLSA settlement between an employee and an employer represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" before approving the settlement. Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2013 WL 1897027, at *10 (E.D. Va. Apr. 12, 2013) (quoting Lynn's Food Stores, 679 F.2d at 1355).

5

### 1. *Bona Fide* Dispute

When deciding whether there is a *bona fide* dispute as to a defendant's liability under the FLSA, courts consider the pleadings and the proposed settlement agreement. Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009)). The FLSA claims at issue in this case constitute a *bona fide* dispute. For over a year, Plaintiffs have sought redress for Defendants' alleged failure to pay them pursuant to the FLSA, and Defendants have consistently and continually denied liability under the FLSA. Specifically, the parties have disputed the actual number of hours the Plaintiffs worked each workweek, the relevant source of information to determine those hours, whether the Defendant's drivers were fairly compensated, and the applicability of the 29 U.S.C. § 913(b)(1) overtime exemption. (Doc. 39 at 12.) Additionally, the parties have engaged in extensive discovery and motion practice. (See Docs. 17, 19, 20, 28.) Therefore, the settlement is the product of contested litigation to resolve a *bona fide* dispute.

### 2. Fairness and Reasonableness

Although the Fourth Circuit has not directly addressed the relevant factors the court should consider when determining whether a FLSA action settlement is fair and reasonable, district courts within the circuit have generally considered the fairness

6

factors a court would consider under Federal Rule of Civil Procedure 23(e). See Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); Lomascolo, 2009 WL 3094955, at * 11. For example, some courts have cited the following factors for consideration:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

Hargrove, 2013 WL 1897027, at *2 (citing Lomascolo, 2009 WL 3094955, at *10). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." Lomascolo, 2009 WL 3094955, at *10 (quoting Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).

Here, the court finds the proposed settlement to be fair and reasonable. As to the first factor, the parties have engaged in extensive discovery, with the Defendants voluntarily producing thousands of documents including payroll and timekeeping records. (Doc. 38-3 at ¶ 4.) Additionally, the claims in this case are complex and require the analysis of thousands of payroll documents for seven individuals over the course of three years as well as

7

analysis of complex state and federal statutory schemes.  With respect to the third factor, as noted above, there is no evidence of collusion between the parties or fraud in procurement of the Settlement Agreement.  (See id. at ¶ 18.)

Fourth, Plaintiffs' counsel has more than forty years of experience negotiating FLSA claims and have spent decades litigating wage claims on behalf of hourly-wage workers such as the Plaintiffs.  (Id. at ¶ 19.)  With respect to the fifth factor, Plaintiffs' counsel readily admits that the Plaintiffs' success on the merits of this case was "far from clear."  (Id. at ¶ 20.)  This is particularly true where the outcome hinged on a factfinder's determination of whether Defendants "willfully" failed to pay the required overtime rate pursuant to 29 U.S.C. § 255(a).  Finally, as to the sixth factor, in light of the potentially dubious nature of Plaintiffs' success and continued expenses and unknowns associated with trial, Plaintiffs' choice to forego roughly 15% of the possible maximum amount of damages for the assurance brought by the Settlement Agreement is a reasonable outcome.  The settlement will therefore be approved.

## II.  ATTORNEYS' FEES AND COSTS

Under the FLSA, the court is authorized to award "a reasonable attorney's fee to be paid by the defendant, and costs of the action," in addition to any judgment awarded to the plaintiff.  29 U.S.C. § 216(b); see Poulin v. Gen. Dynamics Shared Res., Inc.,

8

Case 1:20-cv-01020-TDS-JLW   Document 43   Filed 03/22/22   Page 8 of 14

No. 3:09cv00058, 2010 WL 1813497, at *3-4 (W.D. Va. May 5, 2010) ("[T]he language of the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs[]' . . . ." (quoting Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946))).

There are two primary methods for calculating attorneys' fees in the Fourth Circuit: the percentage of the fund method, and the lodestar method. Phillips v. Triad Guar. Inc., No. 1:09cv71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); Hall v. Higher One Machs., Inc., No. 5-15-CV-670-F, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016). "[T]he percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund," while "[t]he lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,] then to multiply that figure by a reasonable hourly rate." Phillips, 2016 WL 2636289, at *2 (alteration in original) (quotation marks omitted).

In this case, the parties have agreed that Defendants will pay the Plaintiffs for attorneys' fees and costs totaling $32,052.60. (Doc. 38-1 at 2.) The timesheets provided by Plaintiffs' counsel reflect a total of $61,913.50 of recorded fees. (Docs. 42-3, 42-4, 42-5.) Additionally, Plaintiffs' counsel represents that they incurred $2,052.60 in costs litigating these claims. (Doc. 42-2.) Although Plaintiffs' counsel has agreed to

9

receive $32,052.60 from Defendants, their total costs and fees total $63,966.10.

To determine whether the fees sought are reasonable under the percentage of the fund method, the lodestar may be used as a cross-check, as well as the twelve factors from Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). Phillips, 2016 WL 2636289, at *2–3; Kirven v. Cent. States Health & Life Co. of Omaha, No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a cross-check to ensure that the percentage of the fund method award is fair and reasonable). The Fourth Circuit considers twelve factors in judging the reasonableness of an award of attorneys' fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at n.28.[3]

---

[3] These standards have been applied more recently in an unreported FLSA

10

The parties have agreed that Plaintiffs' counsel will receive $32,0052.60. (Doc. 38-1 at 3.) In considering the relevant Barber factors, the court finds the following: (1) the case required collective counsel to expend significant time and labor, as Plaintiffs' counsel invested over 150 hours in litigating the claims in this case for over a year (Docs. 42-3, 42-4)[4] 3; (2) the novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel had to address procedurally and substantively complex FLSA issues, including the complexity of sifting through vehicle inspection reports and time-sheets developed over the course of three years (Doc. 39 at 10); (3) the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country (id.); (4) the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time reduced collective counsel's ability to take on additional cases

---

case, Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 243 (4th Cir. 2010), which, although not precedential, is nevertheless entitled to the persuasiveness of its reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

[4] This does not include time spent on unsuccessful matters or for clerical work.

during the course of this litigation; (5) Plaintiffs' counsel's actual costs in litigating these claims are nearly twice as much as the award to which the parties agreed, so the customary fee for like work factor weighs in favor of approving the settlement (id. at 22); (6) there is no evidence as to the attorneys' expectations at the outset of the litigation or as to the fee arrangement between counsel and their clients; (7) there were no time limitations imposed by the client or circumstances in this case, so the seventh factor is not applicable; (8) the results obtained weigh in favor of approving the fee, because counsel obtained a good result for the collective; (9) the experience, reputation, and ability of the attorneys weigh in favor of approving the fee, as Plaintiffs' counsel has over forty years of experience negotiating FLSA claims and has previously litigated many similar class actions (Doc. 39 at 14); (10) the undesirability of this case within the legal community is not material in this case, nor is (11) the nature and length of the professional relationship between attorney and client; (12) the attorneys' fees award in similar cases factor weighs in favor of approving the settlement because fee awards with the hourly rate charged by Plaintiffs' counsel are common in FLSA cases (Doc. 38-3 at ¶ 15); see, e.g., Erik Pflueger v. Sicilybeby Enterprizes LLC, No. 1:18-CV-144, Doc. 42, slip op. at 2 (M.D.N.C. Mar. 7, 2019) (Eagles, J.) (finding counsel's hourly rate of $425 reasonable).

"The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." Phillips, 2016 WL 2636289, at *7 (quoting Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 467 (D. Md. 2014).) The lodestar fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7 (1983)). Its calculation is presumptively reasonable. Id. (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).

After review of Plaintiffs' counsel's detailed billing records, the court concludes the agreed-to fees are reasonable. Plaintiffs' counsel Willis's hourly rate is $425, and Plaintiffs' counsel Haaf's hourly rate is $350. (Docs. 42-3 at 13; 42-4 at 5.) Given the experience of counsel, the complexity of this case, and the settlement obtained, the lodestar fee is reasonable. See Pedro Torres-Tinajero v. Alpha Const. of the Triad, Inc., No. 1:18-CV-160, Doc. 75, slip op. at 7 (M.D.N.C. Nov. 3, 2020) (Osteen, Jr., J.) (finding an hourly rate of $425 reasonable).

### III. CONCLUSION

For the reasons stated, therefore,

13

IT IS ORDERED that the parties' Joint Motion to Approve FLSA Settlement Agreement (Doc. 38) is GRANTED.

IT IS FURTHER ORDERED that the Settlement Administrator is directed to issue settlement payments to the FLSA collective members in accordance with the terms of the Settlement Agreement.

IT IS FURTHER ORDERED that the payment of attorneys' fees and costs shall be made in accordance with the terms of the Settlement Agreement. (Doc. 38-1.)

IT IS FURTHER ORDERED that this court retains jurisdiction over this case for purposes of resolving any issues pertaining to settlement administration.

IT IS FURTHER ORDERED that the action is DISMISSED WITH PREJUDICE.

/s/ Thomas D. Schroeder<br>United States District Judge

March 22, 2022